```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
BTL INDUSTRIES, INC.,                                            :
                                                                 :
                             Plaintiff,                          :
                                                                 :       23-cv-8617 (LJL)
               -v-                                               :
                                                                 :       OPINION AND ORDER
VERSALINI BEUATY & SPA SALON,                                    :
                                                                 :
                             Defendant.                          :
                                                                 :
-----------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Plaintiff BTL Industries, Inc. ("Plaintiff") brings this action against Defendant Versalini Beauty & Spa Salon ("Defendant") alleging patent infringement, trademark infringement, and unfair competition. Dkt. No. 1. Defendant has not appeared in or answered the action. Plaintiff obtained a Certificate of Default from the Clerk of Court, Dkt. No. 12, and now moves for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and a permanent injunction pursuant to Federal Rule of Civil Procedure 65, Dkt. No. 19. Plaintiff also moves to file portions of its supporting papers under seal. Dkt. No. 14.

For the following reasons, the motions are granted.

## BACKGROUND

Plaintiff is a Delaware corporation with its principal place of business in Massachusetts. Dkt. No. 1 ¶ 1. Plaintiff manufactures and sells body-contouring devices it calls "EMSCULPT" machines, which are based on patented electromagnetic technology. *Id.* ¶¶ 16–17. These devices, cleared for use by the FDA, use "high-intensity, electromagnetic stimulation to tone and strengthen muscles in targeted areas" of their users' bodies. *Id.* ¶ 11. Plaintiff describes its devices as a "breakthrough development in the aesthetics industry" for its noninvasive

techniques, as "EMSCULPT" users can now shape their bodies without having to exercise at all. *Id.* ¶ 15. Plaintiff licenses use of these machines to professionals in the aesthetics industry. *Id.* Beyond its patent rights, Plaintiff also possesses two registered trademarks for the name "EMSCULPT," and it licenses use of those trademarks along with the machines' use. *Id.* ¶ 18.

Defendant Versalini is a business operating in New York that sells aesthetic and beauty treatments. *Id.* ¶ 2. Plaintiff, in its complaint, includes images from Defendant's website and social media accounts. *Id.* ¶ 23. On social media, Defendant shared a video depicting a device it labels "EMSCULPT":



*Id.*

On its website, Defendant advertises "EMSculpt treatment" that "uses high-intensity focused electromagnetic energy to stimulate muscle contraction in the targeted area. This energy

triggers thousands of muscle contractions in just one session, which leads to muscle building and fat burning." *Id*. During the treatments Defendant advertises, "patients lie down while paddles are placed on the targeted area. The paddles deliver high-intensity electromagnetic energy, which causes the muscles to contract." *Id*. The complaint includes the following image of the advertisement:

## How Does EMSculpt Work?

EMSculpt treatment uses high-intensity focused electromagnetic energy to stimulate muscle contractions in the targeted area. This energy triggers thousands of muscle contractions in just one session, which leads to muscle building and fat burning. During an EMSculpt treatment, patients lie down while paddles are placed on the targeted area. The paddles deliver high-intensity electromagnetic energy, which causes the muscles to contract in a way that is not possible through voluntary contractions.
This sensation can feel like an intense workout, but most patients find the treatment to be tolerable.EMSculpt is ideal for individuals who are in relatively good shape but have stubborn pockets of fat or areas of muscle that are difficult to tone through exercise alone. It is not a weight loss treatment and is not recommended for those who are significantly overweight.
Results from EMSculpt can be seen within a few weeks of treatment, with full resultstypically appearing within two to four months. For best results, multiple treatments may be recommended.

## How Many Treatments Will I Need?

The number of EMSculpt treatments you will need will depend on a few factors, including your body composition, your fitness goals, and the area you wish to treat. Generally, a series of four to six treatments, spaced two to three days apart, is recommended for optimal results. Your provider may suggest additional sessions based on your individual needs and goals.
Although some improvement can be noticeable after the initial session, optimal results will gradually appear within several weeks after the final treatment. Patients should also continue a regular exercise routine and maintain a healthy diet to maximize the benefits of EMSculpt.

*Id*.

This process mirrors that protected by Plaintiff's patent, which protects "[a] method for toning muscles in a patient using time-varying magnetic fields, the method comprising: placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing . . . and applying a magnetic fluence . . . to the body region, wherein the time-varying magnetic field . . . cause[s] muscle contraction[s] in the body region." *Id*. ¶ 27. Given these parallels, Plaintiff claims that Defendant has committed and continues to commit patent infringement, trademark infringement, and unfair competition under both federal and New York state law. *Id*. ¶ 21. Specifically, Plaintiff alleges that "Defendant has since at least November 2, 2022, advertised a service using a device they call 'EMSCULPT'" without Plaintiff's consent, thereby infringing on Plaintiff's patent and trademarks and engaging in unfair competition. *Id*. ¶ 22.

## PROCEDURAL HISTORY

On November 2, 2022, Plaintiff's attorneys sent an initial notice letter via email to Defendant, informing Defendant of its infringing conduct. *Id.* Plaintiff's attorneys followed up again on August 28, 2023, after Defendant did not respond. *Id.* Defendant still has not responded.

Plaintiff filed this action on September 29, 2023, asserting claims for patent infringement, trademark infringement, and unfair competition. *Id.* ¶ 21. Plaintiff seeks (1) declaratory relief that Defendant infringed on Plaintiff's patent and trademarks and engaged in unfair competition; (2) a permanent injunction enjoining Defendant from infringing on Plaintiff's intellectual property rights; (3) actual or statutory damages pursuant to 35 U.S.C. § 284 and 15 U.S.C. § 1117; and (4) an award of Plaintiff's costs and expenses in this action. *Id.* at 15–18.

After Defendant failed to answer, appear, or otherwise respond to the complaint by the prescribed deadline, Plaintiff sought and obtained a Certificate of Default against Defendant

from the Clerk of Court.  Dkt. No. 12.  On January 30, 2024, Plaintiff moved for default judgment against Defendant pursuant to Federal Rule of Civil Procedure 55.  Dkt. No. 19.  Plaintiff also moved to file portions of its default judgment motion papers under seal.  Dkt. No. 14.  Defendant has not responded to either motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment.  *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see* Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled," to the extent permitted by the pleadings.  *Mickalis Pawn Shop*, 645 F.3d at 128; *see* Fed. R. Civ. P. 55(b).  Whether entry of default judgment at the second step is appropriate depends on whether the well-pleaded allegations against the defaulting party establish liability as a matter of law.  *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because the defaulting party does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action."  *Id*. (citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations.").  Therefore, this Court is "required to determine whether the [plaintiff's] allegations are sufficient

to establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 85 (2d Cir. 2009). A party later challenging the entry of a default judgment must satisfy the "good cause shown" standard in Federal Rule of Civil Procedure 55(c), which "requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Cap., LLC. v. Birnbaum*, 722 F.3d 444, 454–55 (2d Cir. 2013).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Grp., Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and Plaintiff "must therefore substantiate [her] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir. 2017) (summary order).

## JURISDICTION

Plaintiff brings claims under federal patent and trademark law, so the Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a). The Court also has jurisdiction over Plaintiff's unfair competition claim brought under New York common law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

The Court has personal jurisdiction over Defendant. The complaint alleges that Defendant has its principal place of business in this District and has committed patent and trademark infringement and unfair competition in this District. Dkt. No. 1 ¶¶ 6–8; *see* 28 U.S.C. § 1400(b).

## DISCUSSION

### I. Patent Infringement

Plaintiff seeks a default judgment on its claim of patent infringement. Under the Patent Act, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). There are "five elements of a patent infringement pleading, [namely] to (i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked." *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013) (citing *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000)); *see also Display Techs., LLC v. Leantegra, Inc.*, 2022 WL 354667, at *3 (S.D.N.Y. Feb. 7, 2022).

Plaintiff satisfies each of the five elements required to establish Defendant's liability for patent infringement. First, Plaintiff alleges it exclusively owns a patent for its electromagnetic body-sculpting technology: U.S. Patent No. 10,478,634. Dkt. No. 1 ¶ 17. The patented method and product "combine [ ] magnetic field[s] with radiofrequency, light, mechanical or pressure source" for the purposes of "non-invasive . . . aesthetic" body-shaping. U.S. Patent No. 10,478,634 B2 col. 2, l. 60, col. 3, l. 65; *see Display Techs., LLC*, 2022 WL 354667, at *4 (holding that plaintiff satisfied the first prong by "alleg[ing] its ownership of the '723 Patent with sole rights to enforce" it) (internal quotations omitted). Second, Plaintiff identifies Defendant as the business advertising a service in violation of Plaintiff's patent. Dkt. No. 1 ¶¶ 2, 22. Third, Plaintiff specifically cites the patent that is being infringed. *Id* ¶ 17. Fourth, Plaintiff describes the means by which Defendant infringes the patent, as Defendant advertises services using technology that mirrors Plaintiff's patented technology. *Id.* ¶ 23. By using or offering to sell

7

services under Plaintiff's patented process, Defendant infringes Plaintiff's patent. *See Display Techs., LLC*, 2022 WL 354667, at *4 ("Plaintiff has identified the Defendant through its advertisements and provided screen captures and explanations for the means by which Defendant has infringed [thereby satisfying this prong]."). Finally, Plaintiff has specified that Defendant violated 35 U.S.C. § 271. Dkt. No. 1 ¶ 30.

Having satisfied all five elements, Plaintiff is entitled to default judgment on its patent infringement claims against Defendant.

## II. Trademark Infringement

Plaintiff next seeks default judgment on its claim of trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). *Id.* ¶ 34. The Lanham Act holds liable any person who, without the consent of the registrant of a mark, "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark[,] . . . or . . . reproduce[s], counterfeit[s], cop[ies], or colorabl[y] imitat[es]" a registered mark or applies it to advertisements "intended to be used in . . . connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1).

To establish liability under the Lanham Act, a plaintiff must demonstrate that (1) it has a valid trademark entitled to protection and (2) the defendant's imitation of the trademark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods. *See Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020). To establish the former, "[t]he Lanham Act treats trademark registration as 'conclusive evidence of the validity of the registered mark.'" *Id.* at 84 n.4 (quoting 15 U.S.C. § 1115). To establish the latter likelihood-of-confusion prong, the Court considers the eight factors first articulated in *Polaroid Corp. v. Polaroid Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961). However, "in cases involving counterfeit marks, it may be 'unnecessary to perform the step-by-step examination of each

8

*Polaroid* factor,'" *Chrome Hearts LLC v. Controse Inc.*, 2023 WL 5049191, at *12 (S.D.N.Y. Aug. 8, 2023) (quoting *Philip Morris USA Inc. v. Felizardo*, 2004 WL 1375277, at *5 (S.D.N.Y. June 18, 2004)), particularly in cases where "the goods are also identical and directly competitive,'" *id.* (quoting *Topps Co. Inc. v. Gerrit J. Verburg Co.*, 1996 WL 719381, at *6 (S.D.N.Y. Dec. 13, 1996)).

Plaintiff has established both elements.  Under the first prong, Plaintiff alleges it is the owner of—and includes copies of registration certificates for—U.S. Trademark Registration Nos. 5,572,801 and 6,069,279 for "EMSCULPT" in Class 10 for its medical apparatus and instruments for body toning, shaping, and removal of fat, and 44, respectively, for medical services.  Dkt. No. 1 ¶ 18.

Under the second prong, Plaintiff has established that the marks are likely to cause confusion.  The Lanham Act defines "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  "In general . . . marks that are similar to the registered mark, but differ by two or more letters, are not likely to be considered counterfeit."  *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp.*, F. Supp. 2d 286, 291 (S.D.N.Y. 2007).  Two marks are "substantially indistinguishable" when they are "nearly identical . . . with only minor differences which would not be apparent to an unwary observer,'" *Louis Vuitton Malletier S.A. v. Sunny Merch Corp.*, 97 F. Supp. 3d 485, 499 (S.D.N.Y. 2015) (quoting *Consol. Cigar Corp. v. Monte Cristi de Tabacos*, 58 F. Supp.2d 188, 196 (S.D.N.Y. 1999)), an inquiry that "requires one to consider not only the 'marks in the abstract,' but also 'how they appear to consumers in the marketplace,'" *Chrome Hearts*, 2023 WL 5049198, at *11 (quoting *GTFM, Inc. v. Solid Clothing Inc.*, 2002 WL 1933729, at *2 (S.D.N.Y. Aug. 21, 2002)).

Plaintiff has provided screenshots of Defendant's advertisements on its website and on social media advertising services using an "EMSCULPT" device which purports to function the same way as Plaintiff's devices. Dkt. No. 1 ¶ 23.

First, Plaintiff presents a screenshot from Defendant's social media depicting a device labeled "EMSCUPT," with no changes to the mark's spelling, and advertisements on Defendant's website for "EMSculpt treatments." *Id.* The marks are therefore identical "in the abstract." *GTFM, Inc.*, 2002 WL 1933729, at *2; *see also Off-White LLC v. Baoding Springru Trade Co., LTD.*, 2020 WL 1646602, at *14 (S.D.N.Y. Apr. 3, 2020); *Colgate-Palmolive Co.*, 486 F. Supp. 2d at 291. Second, not only do Plaintiff's marks appear on Defendant's product and website, but the services Defendant sells are in direct competition with those Plaintiff's product provides. In Defendant's social media post, the device looks like a medical apparatus, and on its website's description of "EMSculpt treatments," Defendant advertises "high-intensity focused electromagnetic" processes "to stimulate muscle contractions in the targeted area . . . which leads to muscle building and fat burning." Dkt. No. 1 ¶ 23. The sweep of businesses providing noninvasive body-toning services without requiring exercise is quite limited. It would appear to an average purchaser, viewing Defendant's use of Plaintiff's marks to advertise services identical to Plaintiff's, that the marks are identical. *GTFM, Inc.*, 2002 WL 1933729, at *2. Given that the marks and services are "identical and directly competitive," Defendant's use of Plaintiff's mark is likely to cause confusion. *Id.* at *3.

Accordingly, Plaintiff is entitled to default judgment on its trademark infringement claim.

### III.    Unfair Competition

Finally, Plaintiff asserts claims for unfair competition under the Lanham Act and New York common law. Dkt. No. 1 ¶¶ 39, 46. The "elements of an unfair competition claim under New York law are identical to the elements of an unfair competition claim under the Lanham

Act, save that the plaintiff must also show bad faith by the infringing party." *Fischer v. Forrest*, 286 F. Supp. 3d 590, 617 (S.D.N.Y. 2018) (internal quotation marks omitted), *aff'd*, 968 F.3d 216 (2d Cir. 2020). To prove unfair competition under the Lanham Act, a plaintiff must show the same elements of trademark infringement, that "(1) [plaintiff] owns a valid mark entitled to protection under the Lanham Act, (2) defendant used the protected mark in commerce, without plaintiff's consent, and (3) defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Camelot Si, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 480 (S.D.N.Y. 2022) (quoting *Lopez v. Nike, Inc.*, 2021 WL 128574, at *4 (S.D.N.Y. Jan. 14, 2021)). "Bad faith concerns whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any likely confusion between the two companies' products." *Diesel S.p.A. v. Diesel Power Gear, LLC*, 2022 WL 956223, at *12 (S.D.N.Y. Mar. 30, 2022).

Because the Court concludes that Defendant infringed on Plaintiff's trademarks, it follows that Defendant also engaged in unfair competition under the Lanham Act. *See Hamilton Int'l, Ltd. v. Vortic LLC*, 486 F. Supp. 3d 657, 669 (S.D.N.Y. 2020) ("The standard for a trademark infringement claim under 15 U.S.C. § 1114(1) is the same as the standard for an unfair competition claim under 15 U.S.C. § 1125(a)."), *aff'd*, 13 F.4th 264 (2d Cir. 2021).

Additionally, Plaintiff has demonstrated bad faith by Defendant such that Plaintiff has satisfied the elements for unfair competition under New York state law. Bad faith can be found "where prior knowledge is accompanied by similarities so strong that it seems plain that deliberate copying has occurred." *Diesel S.p.A.*, 2022 WL 956223, at *12. First, the product name "EMSCULPT" is distinctive, and the product is hardly widely known or used such that "the relevant consumer base . . . would be sophisticated enough to . . . review the" differences.

11

*1-800 Contacts, Inc. v. JAND, Inc.*, 608 F. Supp. 3d 148, 158 (S.D.N.Y. Jun. 27, 2022). Further, the resemblance between both parties' products and services is blatant and Defendant's advertisements emphasize the trademarks. *See id.* (finding that the visual similarities between the trademark and the copy were relevant factors for consideration in determining bad faith). Defendant's knowledge that it was using Plaintiff's trademarks in its advertisements without Plaintiff's consent can be inferred from the fact that Plaintiff repeatedly served Defendant with cease and desist notices. Dkt. No. 1 ¶ 22; *see Microban Prods. Co. v. API Indus., Inc.*, 2014 WL 185671, at *8 (S.D.N.Y. May 8, 2014) ("Courts have found bad faith where defendants have failed to comply with cease and desist letters without consulting counsel, and have instead continued infringement."). Given Plaintiff's allegation that Defendant had no authorization to engage in this conduct whatsoever, these facts amply support a finding of bad faith. *See Mobil Oil Corp. v. Pegasus Petrol. Corp.*, 818 F.2d 254, 259 (2d Cir. 1987).

Having satisfied all the required elements, the Court finds Defendant liable for unfair competition and grants default judgment in Plaintiff's favor.

## IV.  Damages

Plaintiff must substantiate its claim for damages in a default judgment, even when well-pleaded allegations establish a defendant's liability. *See Spin Master*, 463 F. Supp. 3d at 370 (citing *Hood*, 2016 WL 1366920, at *15). "Where, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (citation omitted).

Plaintiff seeks actual damages in the form of lost profits for patent infringement, trebled to three times its proffered amount, under 35 U.S.C. § 284, on the grounds that the infringement

was willful.  Dkt. No. 17 at 14–15.  Plaintiff seeks the same amount of actual damages for trademark infringement under 15 U.S.C. § 1117(a), trebled for willfulness under 15 U.S.C. § 1117(b).  *Id*. at 15–16.  In the alternative, Plaintiff requests statutory damages for trademark violation under 15 U.S.C. § 1117(c) at an amount of $50,000 for each of the two counterfeit marks, trebled again due to the willfulness of the violations.  *Id*. at 18–19.

Under the Patent Act, Plaintiff is entitled to damages "adequate to compensate for the infringement."  35 U.S.C. § 284.  The Patent Act allows a plaintiff to recover lost profits "where 'the patentee and the infringer sell substantially similar products in the same market.'"  *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2022 WL 2757643, at *26 (S.D.N.Y. July 14, 2022) (quoting *BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1219 (Fed. Cir. 1993)).  The Sixth Circuit in *Panduit Corp. v. Stahlin Bros. Fibre Works* enunciated a four-factor test to determine when exactly lost profits are available to a plaintiff: "a patent owner must prove: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made."  575 F.2d 1152, 1156 (6th Cir. 1978).

In this case, Plaintiff fails the *Panduit* test on the fourth step.  Plaintiff requests lost profits consisting of its projected net profits for selling one legitimate "EMSCULPT" device, and it arrives at its number by arguing that it is entitled to the amount of money it would have earned if Defendant had purchased its counterfeit device legitimately.  Dkt. No. 17 at 17.  However, the proper measure of lost profits damages is not what the plaintiff would have made had he sold the patented product to the defendant; lost profits under *Panduit* presupposes that plaintiff and defendant are in the same market, competing with one another and measures damages by the profits lost when defendant—and not plaintiff—satisfied the demand of the consuming public.

*Town & Country Linen Corp.*, 2022 WL 2757643, at *29; *Focus Prods. Grp. Int'l, LLC v. Karti Sales Co., Inc.*, 647 F. Supp. 3d 145, 231 (S.D.N.Y. 2022) ("Lost-profits damages are appropriate whenever there is a reasonable probability that, 'but' for the infringement, the patentee would have made the sales that were made by the infringer.") (quoting *Versati Software, Inc. v. SAP Am, Inc.*, 717 F.3d 1255, 1263 (Fed. Cir. 2013) (cleaned up)).  Lost profit damages under the Patent Act do not ask what the plaintiff would have made had the defendant purchased the patented technology from it and not stolen it; "that is a theory of trade secret misappropriation or [in some cases] breach of contract."  *Town & Country Linen Corp.*, 2022 WL 2757643, at *29.  Thus, to obtain lost profit damages, Plaintiff must show that the sales made by Defendant would have been made by Plaintiff and would approximate the revenue it lost when Defendant made the sales itself.  Plaintiff has not done so.  As a result, Plaintiff fails to prove lost profits to support actual damages under the Patent Act.

Under the Patent Act, if a plaintiff cannot prove its lost profits, it is still "entitled to the compensation for the value of what it lost . . . *i.e.*, a reasonable royalty."  *Id.*  However, Plaintiff does not seek a reasonable royalty.  Instead, Plaintiff asks in the alternative for statutory damages under the Lanham Act.  Dkt. No. 17 at 14–16.

Under the Lanham Act, a plaintiff whose trademarks were infringed is entitled "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).  If the defendant's use of the mark was intentional and with knowledge that the mark is counterfeit, then "the court shall . . . enter judgment for three times such profits or damages." 15 U.S.C. § 1117(b).  Alternatively, "[i]n a case involving the use of a counterfeit mark . . . the plaintiff may elect . . . to recover, instead of actual damages and profits . . . an award of statutory damages." 15 U.S.C. § 1117(c).  Statutory damages will be "not less

14

than $1,000 or more than $200,000 per counterfeit mark" or "if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold." 15 U.S.C. § 1117(c).

Given Defendant's default and Plaintiff's inability to make contact, Plaintiff cannot show Defendant's profits from the infringement. Dkt. No. 17 at 21. But while Plaintiff did not prove actual damages or Defendant's profits, the Lanham Act's statutory damages provision explicitly "provides a mechanism to compensate plaintiffs even in the absence of proof of actual damages or profits." *Tiffany & Co. v. Costco Wholesale Corp.*, 2019 WL 120765, at *6 (S.D.N.Y. Jan. 7, 2019) (quotation omitted). Plaintiff requests an amount of $50,000 for each of its two trademarks, trebled to $150,000 each for willfulness. Dkt. No. 17 at 19. First, Plaintiff is entitled to statutory damages under 15 U.S.C. § 1117(c) because Defendant used counterfeit marks. *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004). However, Plaintiff is not entitled to trebled statutory damages, because although 15 U.S.C. § 1117(b) allows for trebled damages in cases of counterfeit goods, trebling only applies to actual damages awarded under 15 U.S.C. § 1117(a). 15 U.S.C. § 1117(a)–(b); *see Sream, Inc. v. Khan Gift Shop, Inc.*, 2016 WL 1130610, at *8 (S.D.N.Y. Feb. 23, 2016) ("[W]hereas the Lanham Act allows for trebling of actual damages under Section 1117(b), it does not allow for trebling of statutory damages, awarded under Section 1117(c)."), *report and recommendation adopted*, 2016 WL 1169517 (S.D.N.Y. Mar. 22, 2016); *Glob. Van Lines, Inc. v. Glob. Moving Exp., Inc.*, 2007 WL 7769395, at *4 (S.D.N.Y. Aug. 20, 2007) ("Statutory damages are . . . an alternative to recovering actual and treble damages."). A different provision of the Lanham Act, 15 U.S.C. § 1117(c), provides for enhanced damages in the event that the use of the counterfeit

15

mark was willful.  15 U.S.C. § 1117(c); *see Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 215 (2020).

Plaintiff is still entitled to heightened statutory damages under Section 1117(c) for Defendant's willful infringement.  *See KAWS, Inc. v. Individuals, Corps., LLCs, P'ships*, 2023 WL 5717517, at *9 (S.D.N.Y. Sept. 5, 2023).  "An infringement is willful where the defendant had knowledge or recklessly disregarded the possibility that its actions constituted infringement." *Streamlight, Inc. v. Gindi*, 2019 WL 6733022, at *13 (E.D.N.Y. Oct. 1, 2019).  Given that Plaintiff served Defendant with notice of Defendant's infringement not once but twice, knowledge can be inferred, and since Defendant subsequently continued to violate the Patent and Lanham Acts, these infringements were willful.  Dkt. No. 1 ¶ 22; *see 4 Pillar Dynasty LLC v. N.Y. & Co., Inc.*, 933 F.3d 202, 210 (2d Cir. 2019) (finding no clear error in the district court's reliance on "(1) Defendants' failure to stop selling the infringing goods after the action was filed; (2) Defendants' failure to call the witnesses [they said they would call] . . . ; and (3) its determination that Defendants'" use of the trademarked word was "a blatant infringement" to determine that the defendant acted willfully).  Therefore, Plaintiff is entitled to heightened statutory damages of up to $2,000,000 per mark.  15 U.S.C. § 1117(c).

Although the Lanham Act provides for statutory damages in cases of counterfeit marks, it "does not provide guidelines for courts to use in determining an appropriate award." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002).  "However, courts have found some guidance in the caselaw of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides statutory damages for willful infringement." *Gucci Am., Inc.* 315 F. Supp. 2d at 520.  Relevant factors under the Copyright Act include:

> (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others

besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant."

*Id.* (quoting *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)).

Here, Defendant's default has made consideration of the first few factors impossible. Instead, this Court can take into account deterrent effects, Defendant's lack of cooperation, willfulness, and potential for continued infringement. *See Philip Morris USA Inc. v. A & V Minimarket, Inc.* 592 F. Supp. 2d 669, 674 (S.D.N.Y. Dec. 15, 2008) ("The deterrent effect on other potential infringers and the defendants' lack of cooperation are sufficient by themselves to justify an award of [$2,000 per defendant]."). An amount of $100,000 per infringed trademark is appropriate given Defendant's willful infringement. $100,000 per mark in statutory damages will help prevent Defendant from continuing to infringe on Plaintiff's intellectual property and deter others from engaging in similar misconduct. *See Off-White LLC*, 2020 WL 1646602, at *19–20 ("A substantial award is necessary to discourage the Defaulting Defendants from continuing to engage in their illicit conduct."). Additionally, $100,000 per mark is reasonable considering the range of awards courts have granted under similar circumstances. *See, e.g.*, *Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.*, 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006) (awarding the plaintiff $125,000 for each infringed mark because such an amount would "impress upon [the defendant] that there are consequences for its misconduct" and "serve as a specific deterrent to [the defendant] and as a general deterrent to others who might contemplate engaging in infringing behavior"); *All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 616–17 (S.D.N.Y. Jan. 3, 2011) (awarding the plaintiffs $50,000 per trademark after the defendants "willfully continued their course of wrongful conduct after being put on notice of [the p]laintiffs' claims regarding infringement of those trademarks" (internal citations omitted));

*Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, 2007 WL 3287368, at *3–4 (S.D.N.Y. Nov. 7, 2007) (awarding the plaintiff $250,000 for each of two infringed marks where a defaulting defendant acted willfully and "left the Court with no information as to any of the factors relating to the defendants' circumstances").

Accordingly, Plaintiff is hereby awarded $100,000 per infringed trademark, for a total amount of $200,000.

**V.     Permanent Injunction**

In addition to damages, Plaintiff seeks a permanent injunction to stop Defendant from continuing to infringe on Plaintiff's intellectual property rights.  Dkt. No. 17 at 9.  A court may enter a permanent injunction if the plaintiff demonstrates: "(1) that it suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants a remedy in equity for the plaintiff; and (4) that the public interest would not be disserved."  *Spin Master*, 463 F. Supp. 3d at 376 (quoting *eBay Inc. v. MercExch., LLC*, 547 U.S. 388, 391 (2006)).

A permanent injunction is appropriate in this case, because all four factors weigh in Plaintiff's favor.  First, Plaintiff suffered an irreparable injury via Defendant's patent and trademark infringements, and unfair competition.  At least in terms of trademark infringement, "[i]rreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither calculable nor precisely compensable."  *Int'l Council of Shopping Ctrs., Inc. v. Global Infotech LLC*, 2019 WL 2004096, at *5 (S.D.N.Y. May 7, 2019) (quoting *U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011)).  Here, as long as Defendant continues to advertise its products as true "EMSCULPT" devices without Plaintiff's permission, Defendant will be able to influence Plaintiff's reputation for consumers who believe

they are receiving genuine "EMSCULPT" treatments. Second, Defendant's default in this case suggests that it will continue to infringe without a permanent injunction. *Pearson Educ., Inc. v. Vergara*, 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010) ("A court may infer from a defendant's default that it is willing to, or may continue its infringement."). Third, Plaintiff suffers hardship in that Defendant's activity will impact Plaintiff's reputation in the market, but Defendant "through [its] default . . . [has] not identified any hardships for the Court to consider—nor could [it]." *Spin Master*, 463 F. Supp. 3d at 376. Finally, the public has an interest in "being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010).

As these four factors weigh in favor of Plaintiff, the Court hereby permanently enjoins Defendant from:

(1) Using BTL Trademarks to promote, market, advertise, or offer for sale any good or service that is not offered by a genuine BTL product, or is not authorized by BTL;

(2) Passing off, inducing, or enabling others to sell or pass off any good or service as a good or service offered by a genuine BTL product that is not BTL's or not offered with BTL's approval; and

(3) Further infringing BTL's trademarks and patent.

## VI.  Motion to Seal

Finally, Plaintiff moves to seal portions of its memorandum of law, Dkt. No. 20, and declaration of Jason Wooden, Dkt. No. 22, in support of its motion for default judgment, Dkt. No. 14. Plaintiff's proposed redactions are extremely limited. They consist of four phrases in Plaintiff's thirty-page memorandum of law and two sentences in Wooden's three-page declaration. *See* Dkt. Nos. 17–18. All of the proposed redactions concern confidential financial

information—including pricing and profit data.  *See* Dkt. No. 14 at 1 (explaining the redactions are limited to "confidential financial information and closely guarded internal metrics concerning Plaintiff's EMSCULPT NEO® and EMSCULPT® aesthetic medical devices").  Courts routinely permit parties to file "confidential information about pricing and profit" under seal.  *United Pool Distribution, Inc. v. Custom Courier Sols., Inc.*, 2024 WL 2979365, at *1 (W.D.N.Y. June 13, 2024) (quoting *W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, 2022 WL 890184, at *3 (S.D.N.Y. Mar. 25, 2022)).  And Plaintiff's proposed redactions are sufficiently "narrow" and "specific" to protect that confidential information, *Blackboard Inc. v. Int'l Bus. Machs. Corp.*, 2021 WL 4776287, at *2 (S.D.N.Y. Oct. 12, 2021), without compromising the public's ability to monitor the courts, *see Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).  The Court therefore grants Plaintiff's "limited, targeted, and well-supported request[] to seal."  *Major League Baseball Players Ass'n v. Arroyo*, 2024 WL 3028432, at *5 (S.D.N.Y. June 17, 2024).

## CONCLUSION

The motion for default judgment, Dkt. No. 19, and the motion to seal, Dkt. No. 14, are GRANTED.  Plaintiff shall submit a proposed judgment consistent with this Opinion and Order on or before July 23, 2024.

The Clerk of Court is respectfully directed to close Dkt. Nos. 14 and 19.

SO ORDERED.

Dated: July 8, 2024
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge